JOURNAL ENTRY AND OPINION
Defendant-appellant Clyde Scott, Jr. a.k.a. William Scott (appellant) appeals his conviction of aggravated robbery (R.C.2911.01) entered in Cuyahoga County Common Pleas Court following a jury verdict. For the reasons stated below, we affirm.
The record demonstrates that on November 18, 1998, appellant and two other men were arrested by the Cleveland police in connection with an aggravated robbery. On January 20, 1999, the Cuyahoga County Grand Jury returned a one count indictment charging appellant with aggravated robbery (R.C. 2911.01) with two firearm specifications (R.C. 2941.141 and 2941.145). On January 25, 1999, appellant was arraigned, was found to be indigent, was assigned counsel and entered a plea of not guilty to the charges against him. On February 16, 1999, at the commencement of the jury trial, appellant's indictment was amended to reflect appellant's true name, Clyde Scott Jr. and to delete the one-year firearm specification as charged pursuant to R.C. 2941.141. The matter proceeded to trial on the charge of aggravated robbery with the firearm specification pursuant to R.C. 2941.145.
At trial, the state presented the testimony of five witnesses. First, Officer Walter Summerauer, a five and one-half year veteran of the Cleveland Police Department testified that while on patrol on November 18, 1998, about 10 p.m. he and his partner, Officer Timothy Zbikowski, were flagged down by a citizen wearing a t-shirt and no shoes. The man claimed to have been robbed by three men and identified their car, a Buick Regal, only 200 feet away. The officers requested assistance for the victim by radio and proceeded to follow the Buick and attempted a traffic stop of the car by activating the patrol car's overhead lights and sirens. However, the Buick immediately started fleeing, running stop signs, driving carelessly and speeding up to 60-70 m.p.h. on residential streets. Officer Summerauer testified that their patrol car was close enough for him to observe three men in the car and its license number. The officers conveyed this information to dispatch who responded that the Buick had been taken in an aggravated robbery at gun point two days earlier. Officer Summerauer stated that he never lost sight of the Buick during the three-mile chase. He observed a black semi-automatic handgun thrown from the passenger side window which was never recovered. A multitude of patrol cars were involved in the pursuit which ended at the corner of Sherman and McCurdy where the car crashed into an embankment. He and his partner exited their cruiser and drew their guns. He approached the driver's side of the vehicle while Officer Zbikowski covered the passenger side. As a result of the crash, the passenger side door of the car was lodged against a tree and could not be opened but the driver's side door was able to open halfway. Appellant, who was in the driver's seat, attempted to get out of the car. Ultimately, all three men were removed from the driver's door and handcuffed. Officer Summerauer observed a two-foot long, nine millimeter gun partially placed underneath the driver's seat on the floorboard. In accordance with standard police protocol, because there was no imminent danger, this weapon was not removed right away. Subsequently, it was determined that the gun was loaded with one shell in the chamber. Officer Summerauer stated that he was present when the victim's two jackets, Nike shoes, jersey, pager, $58 and New York Yankees skullcap were found inside the Buick. The victim was brought to the scene and he identified co-defendant Terry Tart as the first man who had alighted from the Buick on the passenger side, had pointed the nine millimeter gun at him and had ordered him to lay it down on the ground. The police found co-defendant Terry Tart to be in possession of the victim's cash. Next, the victim identified the second co-defendant, James King, as involved in the robbery. When Officer Summerauer took preliminary personal information from appellant, he determined the Buick was not appellant's vehicle. Officer Summerauer and his partner arrested appellant, and appellant's co-defendants Tart and King, they read them their rights and they transported them to the Fifth District Cleveland Police Station where the case was assigned to Detective P. J. Jones.
Next, Officer Timothy Zbikowski, a five-year veteran of the Cleveland Police Department and Officer Summerauer's partner, offered testimony essentially corroborating Officer Summerauer's version of events. He stated that while driving patrol the frantic victim summoned them, told the officers that he had been robbed and identified the robbers' Buick Regal. Zbikowski pulled his cruiser behind the Buick, activated its lights and siren, but, the Buick refused to pull over. Officer Zbikowski said he was close enough to observe the three occupants, one in the driver's seat, one in the front passenger seat and one in the rear passenger seat on the passenger side. While the officers pursued the Buick, Officer Summerauer alerted other police to the location of the victim over the radio. During the chase, Officer Zbikowski stated that he never lost sight of the car and he observed an object which he believed to be a gun thrown from the passenger window. When the Buick hit the embankment the driver's door opened. While Officer Summerauer went to the driver's side of the car, Officer Zbikowski stayed behind the car, close to the passenger side, and ordered the occupants to lift up their hands. Appellant was the driver and he was assisted out of the car, handcuffed and laid on the ground by Officer Summerauer. Then, Officer Summerauer assisted the other two men out of the car while Officer Zbikowski remained toward the back of the car with his gun drawn. He saw a gun which looked something like a rifle with a longer than normal barrel on the floorboard directly in front of the driver's seat. He took a polaroid picture of the gun before he removed it and then determined it was loaded with a nine millimeter bullet. The victim's clothing and tennis shoes were located in the car and were removed after photographs were taken. Within fifteen or twenty minutes of the arrest, the victim arrived on the scene with Officer Rose. On cross-examination he explained that a cold stand identification is an identification of the perpetrator of a crime, by a victim, in a relatively short time after the incident happened.
Officer Bobby Rose, an eleven-year veteran of the Cleveland Police Department, testified that on November 18, while working radar and traffic enforcement, he heard of the police pursuit over the radio. He drove in the direction of the chase, responded to the request for assistance for the victim and located the victim who told him that he was robbed by three men armed with a nine-millimeter gun. A female on the scene was able to provide both a description of the robbers' car and its license plate number. The victim recounted the events during the robbery telling Officer Rose that two guys got out of the car. One man had a pistol and the other man had a shotgun, which they pointed at the victim. The victim told him the robbers proceeded to take his tennis shoes, jacket, pager, $58 in cash and his jersey. Officer Rose transported the victim to the scene of the crash where the suspects had already been handcuffed and placed in separate zone cars. The victim remained in his zone car and identified each of the suspects as they were brought out one at a time, gave their location in the Buick and identified their roles. The victim confirmed that the clothing found in the car was his and the items were returned to him although the victim's money was kept as evidence. The weapon located below the driver's seat looked like a sawed-off shotgun, but it was a nine millimeter rifle with the stock broken off and a pistol grip attached. On cross-examination, Officer Rose indicated that the victim identified the two co-defendants, not appellant, as the men who robbed him at gunpoint. Officer Rose verified that the victim told him that appellant never left the vehicle, brandished the weapon, threatened the victim or took his property.
The victim, Deran Harris, testified that he lives in the area of East 130 Street and Griffing Avenue with his grandmother. The night of November 18 he was wearing three jackets, a hat, jeans and three-day-old Anthony Harding Nike tennis shoes because it was cold, snowing and slushy. He was going to the store to buy potato chips and juice when the robbery occurred. He noticed a two-door light blue Buick Regal with two occupants and thought it was suspicious because the first time he saw the car there was only one person in it. After he made eye contact with the passenger, he told his friends who were nearby to watch out. Harris went into the store, made his purchases, exited and saw the Buick pass again, this time with three occupants. As the Buick pulled alongside, the passenger made eye contact with him. Harris walked away but the passenger jumped out of the car. Harris turned around and the man put a glock pump in his chest and told him to lay down. Harris obeyed, laid down on his back and, while the man pointed the gun at his chest, the back passenger got out of the car and pointed a nine-millimeter gun at Harris' head. The man with the pump ordered Harris to remove his shoes, the man snatched off his hat, took his money and told him to remove his jackets and his jersey. The second man searched his pockets and took his pager. Harris was able to get a good look at the two co-defendants, but not of the driver. Meanwhile, the driver turned the car around and sat in the running car waiting for his assailants to get in. The two robbers made a threat to his friend Shontie; then, they hopped into the car and the car took off. As Harris stood up, a police car turned onto the street. He stopped the patrol car, told them of the robbery and was able to point out the Buick because it was only about six houses down. The police turned on the sirens and chased the car while Harris waited for another police car to arrive. The officer talked to the witness, Shontie, and took Harris to the location of the Buick. Harris was able to identify the two co-defendants because he got a good look at their faces while they were pointing the guns at him but he was unable to identify the driver. His stolen clothing was recovered at the scene. The police took pictures and returned his property except the money. Harris gave his statement to Detective Jones the next day.
On cross-examination, Harris conceded that appellant neither brandished a gun nor took anything from him. Harris stated that although Officer Rose testified that Harris was able to identify appellant at the scene that night, in fact, he did not.
Finally, Detective Paul Jones, a twenty-six year veteran of the Cleveland Police Department, testified that he was assigned to the investigation the day after the robbery for which Terry Tart and James King and appellant had been arrested. During his investigation: he contacted the victim who came in to the district office and made a statement; he interviewed both arresting officers, Summerauer and Zbikowski, and Officer Rose; he concluded that appellant was the driver of the vehicle; he verified the personal information of the arrested men; he had the gun tested at the SIU lab to determine its operability; he observed the gun being fired; and, he made several attempts to contact the witness, Shontie McCollum, at her home without success.
The state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29 which was denied by the court. The defense presented no witnesses. Closing arguments were made, the jury was charged and after deliberations, the jury returned a verdict of guilty on the charge of aggravated robbery and not guilty as to the firearm specification. Appellant was sentenced to a five-year term of imprisonment at the Lorain Correctional Institution. This appeal follows in which appellant advances three assignments of error for our review.
 I. THE EVIDENCE WAS INSUFFICIENT TO CONVICT THE APPELLANT OF ROBBERY.
II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III. THE SHOW-UP IDENTIFICATION WAS UNDULY
 SUGGESTIVE AND UNFAIRLY IMPLICATES APPELLANT.
In his first assignment of error, appellant contends that the evidence was insufficient to warrant his conviction. Specifically, appellant complains that the jury verdicts which found appellant not guilty of the firearm specification but, on the same evidence, found appellant guilty of aggravated robbery were inconsistent. Thus, appellant argues that reasonable minds could not reach the same inconsistent conclusions.
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. When the appellant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed unless this court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Id. at 273.
Appellant was convicted of aggravated robbery in violation of R.C. 2911.01 which provides in pertinent part that no person:
 * * * in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately afterward the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
We find that the facts in the record when viewed in the light most favorable to the prosecution, support a finding beyond a reasonable doubt of the essential elements of aggravated robbery as charged. The trial testimony demonstrates that appellant was driving the vehicle from which his co-defendants alighted, held guns to the victim and took his possessions. Appellant turned the vehicle around, waited for his accomplices and drove the vehicle in which they fled from the scene of this robbery, attempting to elude the police. When the police apprehended the trio, the operable firearm used in the robbery was shown to be on the floorboard of the vehicle beneath appellant's seat, near appellant, conveniently accessible and within appellant's immediate physical reach. Therefore, it can be said that sufficient evidence exists in the record, when viewed in a light most favorable to the prosecution, to show that appellant while attempting or committing a theft offense or in fleeing after the offense committed upon the victim Deran Harris, and while having a firearm on or about his person or under his control, displayed, brandished or used the firearm or indicated that he possessed or used it. A reasonable trier of fact could have found that all the essential elements of aggravated robbery were proven beyond a reasonable doubt.
Accordingly, we find appellant's first assignment of error to be without merit.
In his second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. Specifically, appellant contends that there was no evidence to prove that he conspired or participated in the alleged robbery.
To determine whether a conviction is against the manifest weight of the evidence presented, this court examines the entire record to determine whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction. State v. Getsy (1998), 84 Ohio St.3d 180. The question is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, at the syllabus. In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines and may be taken into account by the reviewing court: 1) the reviewing court is not required to accept as true the incredible * * *; 2) whether the evidence is uncontradicted * * *; 3) whether a witness was impeached * * *; 4) what was not proved * * *; 5) the certainty of the evidence * * *; 6) the reliability of the evidence * * *; 7) whether a witness' testimony is self-serving * * *; and 8) whether the evidence is vague, uncertain, conflicting or fragmentary. State v. Mattison (1985), 23 Ohio App.3d 10,14. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, when we review the entire record, we find that the trial testimony reveals that three men were involved in the aggravated robbery in which two armed men took the victim's jackets, shoes, pager and money at gunpoint while the third man waited in the get-away car. The driver positioned the get-away car; waited in the running car; and, after the armed men got back into the car, the driver engaged the police in a high speed chase which continued until the car crashed into an embankment. The police testified that at all times during the high speed pursuit the get-away car was in their sight. One of the two guns used in the robbery was found on the floorboard beneath the driver's seat within arm's reach of appellant. Appellant was observed by both police officers as the driver of the get-away vehicle.
Upon review of this evidence presented it can be said to be credible, uncontradicted, not self-serving and neither vague, uncertain nor fragmentary. Therefore, when we weigh the evidence and all reasonable inferences and when we consider the credibility of the witnesses, we conclude that the jury did not lose its way in finding appellant guilty of aggravated robbery; thus, we find no manifest miscarriage of justice occurred and we find appellant's conviction was not against the manifest weight of the evidence. Accordingly, we find appellant's second assignment of error to be without merit.
In his third assignment of error, appellant complains that he was unfairly implicated by a show-up identification procedure. Specifically, appellant asserts that because the victim never identified him, he was found guilty because of his supposed complicity with his passengers' acts. Appellant, citing Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967, complains that the show up identification is strongly disfavored by the Supreme Court because they can be unnecessarily suggestive and conducive to irreparable mistaken identification. Id. at 302.
The record demonstrates that although appellant's co-defendants were identified by the victim on the scene, appellant was not identified in the show up identification procedure undertaken upon his apprehension. However, the record does not suggest that appellant was convicted based upon an identification of his co-defendants which was unduly suggestive and unreliable.
In the matter before us, the record supports appellant's conviction based upon his complicity in the aggravated robbery. Appellant was observed by the police to be the driver of the get-away vehicle in which the armed robbers fled. The police officers testified that they never lost sight of the vehicle during the high speed pursuit. The victim testified that after the armed men exited the vehicle and took his possessions at gun point, the driver of the get-away car made a u-turn, the driver returned to the scene of the robbery while it was in progress, the driver waited in the car with the motor running until the armed men returned and the driver led the police on a high speed chase while attempting to elude them. The police testified that the chase ended only when the driver crashed into an embankment substantially totaling the vehicle.
Therefore, based on the evidence in the record, we do not find that appellant's conviction was based upon an identification procedure which unfairly implicated appellant in this crime. Accordingly, appellant's third assignment of error is without merit.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
LEO M. SPELLACY, J. and MICHAEL J. CORRIGAN, J., CONCUR.